# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MARCUSS P. CHILDS,

                Plaintiff,

      -vs-                          Case No.   11-C-0194

DAVIS TSAI,
CARLO GAANAN,
TIM REICHENBERGER,
JANE DOE,
JOHN DOE 1, and
JOHN DOE 2,

                Defendants.

## DECISION AND ORDER

This matter is before the Court on a motion for summary judgment filed by defendant Davis Tsai, as well as several motions filed by the plaintiff.

### I. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248.

A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## II. FACTS[1]

Defendant David Tsai, M.D., ("Tsai") graduated from medical school at Northwestern University and is licensed to practice medicine in the State of Wisconsin. Tsai is board certified by the American Board of Orthopaedic Surgeons in Orthopaedic Sports Medicine. At no time from 2009 through the present has Tsai been under any contractual obligations to provide care or treatment to state prisoners.

---

[1] The Facts are taken from the parties' proposed findings of fact and affidavits. Where there are disputes, the Court has presented the plaintiff's version of the facts. *See Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009).

On January 2, 2009, an emergency room physician at Mercy Medical Center in Oshkosh, Wisconsin, contacted Tsai and asked him to provide a telephone consultation. Tsai was told that a patient (the plaintiff) was reporting a left foot injury after he "jammed" his left foot playing basketball. X-rays taken at Mercy Medical Center showed fractures of the second and third proximal metatarsals, and an old fracture of the fifth metatarsal. Tsai recommended that the plaintiff be given a splint and told to follow up with Tsai in his office the following week.

The plaintiff was given a posterior Orthoglass splint for immobilization and instructed to use crutches and be non-weightbearing on the foot. He also was told to elevate the foot, apply cold compresses, and use an over-the-counter analgesic to treat any discomfort.

On January 9, 2009, Tsai examined the plaintiff at his office at the Kennedy Center for Sports Medicine in Oshkosh, Wisconsin. Tsai reviewed the relevant x-rays and concluded that the plaintiff had a "[s]lightly non-united 5th metatarsal distal shaft fracture with minimally displaced hairline base of the 2nd and 3rd metatarsal fracture." (Tsai Proposed Finding of Fact, ¶ 9). Tsai demonstrate to the plaintiff how he could wear a loose-fitting shoe on the injured left foot and put weight on his heel only, continuing to use the left crutch for balance. This was to prevent him from becoming unsteady in the "icy climate" or developing atrophy of the anke, and would allow him to avoid a cast. Tsai emphasized that he could be weightbearing on the heel only. Tsai further instructed the plaintiff that because

3

he was not diabetic and not a smoker, he believed the fracture would heal over time without surgery. Tsai noted that the plaintiff had been taking Tylenol-3 for pain relief.

On January 22, 2009, the plaintiff was seen by a nurse at the Wisconsin Resource Center ("WRC") who denied him access to an institution doctor concerning his left foot injury. The plaintiff was instructed to speak with Tsai as a follow-up. On January 29, 2009, the plaintiff saw a nurse at WRC and was told to continue to follow the plan and stated she would refer his request to a doctor. A WRC physician saw the plaintiff on January 30, 2009, and told him to address his concerns with Tsai.

Tsai saw plaintiff at the Kennedy Center again on February 16, 2009. The plaintiff reported ongoing pain and swelling and expressed anger that his injury was not get healed. The plaintiff made Tsai aware of the pain in the foot, the foot being swollen up to his ankle, and the discoloring around the bottom and top of the foot. The plaintiff also was upset because he believed the injury was originally described to him as a "toe fracture," but was subsequently described as a "foot fracture." The plaintiff questioned why he had been permitted to put weight on his heel if he had a foot fracture, since the heel is part of the foot. Tsai explained to the plaintiff that the part of the foot that was fractured was known as a "metatarsal," and that there was no problem putting weight on the heel because the heel was not broken. Tsai told the plaintiff that he needed to progress to weight bearing. Tsai also reaffirmed his opinion that the plaintiff did not need surgery for the injury he sustained. Tsai communicated these findings to the prison. Tsai noted that he would see the plaintiff again

in six weeks. He opined that he saw no need for the plaintiff to take Tylenol-3, but gave the plaintiff Tylenol and Ibuprofen. The plaintiff recalls Tsai saying he would see the plaintiff again in one to two weeks.

Tsai has no recollection of examining the plaintiff or providing treatment for him in March 2009, and a review of the medical records he prepared concerning the plaintiff's care, Tsai has not found any records suggesting that he provided any examination or treatment to the plaintiff in March 2009. Nevertheless, the plaintiff believes he was seen by Tsai in early March concerning pain and swelling and asserts that Tsai altered medical records. According to the plaintiff, he saw Tsai in early March and Tsai told the plaintiff he was healing and instructed him to give up the crutches.

On March 6, 2009, the plaintiff spoke with a nurse who informed him that his last appointment had been canceled, but she had rescheduled and the plaintiff would be seen soon.

On March 19, 2009, Dr. Gaanan treated the plaintiff for asthma. The plaintiff complained about left foot pain and swelling. X-rays were ordered and feed cell was discontinued to Tsai instructed the plaintiff to walk on the foot. Tsai faxed his notes to Dr. Carlo Gaanan at the prison the same day. On March 26, 2009, WRC medical staff informed the plaintiff that institution x-rays showed no healing of the second and third metatarsals.

According to the plaintiff, he informed Tsai on March 29, 2009, that institution issues prevented him from using the bone stimulator. Tsai does not recall this and does not

5

have records of any meeting in March.

Tsai saw the plaintiff again at his office on April 6, 2009. Tsai noted that the fractures remained unhealed. The plaintiff avers that he requested crutches to offset the pain, but Tsai denied the request. However, because the fractures had not healed over time, Tsai offered the plaintiff the option of surgical intervention. Tsai performed surgery on the plaintiff on April 14, 2009, which consisted of a left foot open reduction and internal fixation of the second and third metatarsal base and an open reduction and internal fixation of the fifth metatarsal shaft distally.

Tsai saw the plaintiff at the Kennedy Center on May 29, 2009. Tsai noted that, according to the prison, the plaintiff had not been using the bone stimulator he had prescribed, and had refused to use it twelve out of thirty-four sessions offered. The plaintiff asserts that the medical staff and segregation staff at the prison failed to provide him with the bone stimulator during portions of April and May of 2009. On May 29, Tsai had the plaintiff's cast removed and placed him in an advanced walking boot that he could remove to sleep and bathe. However, Tsai instructed the plaintiff that he was not yet allowed to be weightbearing. Tsai noted, "unfortunately he is not very compliant with the protocol I have outlined." According to the plaintiff, Tsai was referencing the bone stimulator.

The plaintiff saw Tsai on June 29, 2009, and x-rays showed early signs of healing of the fracture site.

On July 27, 2009, Tsai discharged the plaitniff from his care. Tsai noted that

6

the x-rays demonstrated healing of the plaintiff's fractures. Tsai told the plaintiff to discontinue the bone stimulator and begin full weightbearing as tolerated. The plaintiff could start running in October and could start jumping in November.

### III. DISCUSSION

Defendant Davis Tsai asserts that he is entitled to summary judgment because he was not deliberately indifference to the plaintiff's serious medical needs and because he was not acting under the color of state law when he treated the plaintiff.

The plaintiff has filed a motion opposing summary judgment. He asks the court to deny Tsai's motion but does not ask the court to grant summary judgment in his favor. Accordingly, the plaintiff's motion does not seek specific relief. It will be denied and considered as part of the plaintiff's opposition to Tsai's motion.

**A.      Color of State Law**

Tsai argues that he was not acting under the color of state law for the following reasons: (1) all Tsai's medical care of the plaintiff took place outside the prison; (2) there is no evidence of state control or coercion regarding Tsai's care of the plaintiff; (3) Tsai has no contracts with the state; and (4) the plaintiff also was treated by institutional medical staff.

The plaintiff insists that Tsai was acting under the color of state law because he had replaced the State in the provision of the plaintiff's healthcare. The plaintiff was told by medical staff at the prison that no treatment would be given to him for his foot outside of the treatment by Tsai.

7

"When a plaintiff brings a section 1983 claim against a defendant who is not a government official or employee, the plaintiff must show that the private entity acted under the color of state law." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 823 (7th Cir. 2009). The "state action doctrine" requires a finding of a "close nexus between the State and the challenged action" that the challenged action "may be fairly treated as that of the State itself." *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). "The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?'" *Id.* (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

In *West v. Atkins*, 487 U.S. 42, 57 (1988), the Supreme Court held that, when a physician is employed by the state to provide medical services to state prison inmates, that physician acts under the color of state law for purposes of section 1983. The Court emphasized the function of the physician, not the particular contractual agreement the physician had with the state:

> It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State. Whether a physician is on the state payroll or is paid by contract, the dispositive issue concerns the relationship among the State, the physician, and the prisoner. Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoner of the means to vindicate their Eighth Amendment rights. The State bore an affirmative obligation to

8

> provide adequate medical care to West. The State delegated that function to respondent Atkins; and respondent voluntarily assumed that obligation by contract.

487 U.S. at 55-56 (emphasis added).

Under *West*'s "public function test," the analysis ought to focus on the relationship among the state, the health care provider, and the prisoner. *Plymouth*, 577 F.3d at 826. In assessing this trilateral relationship, an examination of following factors is beneficial: (1) the setting in which the medical care is rendered; (2) the contractual relationship between the state and the medical care provider; and (3) the relationship of the private provider to the prisoner.

Unlike *West*, in this case, it is undisputed that Tsai is a privately employed medical doctor who has no contract or agreement with the prison to provide treatment to its inmates. Tsai does not visit prisoners at the prison, and receives no bonuses or other incentives for providing case for prisoners. Further, no one at the prison chose Tsai to provide care for the plaintiff; it was the private emergency room doctor who contacted Tsai with the referral. Even viewing the evidence in the light most favorable to the plaintiff, it does not appear that Tsai was acting under the color of state law when he treated the plaintiff. Nevertheless, the Court also will consider whether Tsai treated the plaintiff's serious medical condition with deliberate indifference.

**B.      Deliberate Indifference**

In *Duckworth v. Ahmad*, 532 F.3d 675, 678-79 (7th Cir. 2008), the Seventh

9

Circuit set forth the legal standard for Eighth Amendment medical care claims:

> The states have an affirmative duty to provide medical care to their inmates. *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). And the upshot of this duty is that the "deliberate indifference to [the] serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'" and violates the Eighth Amendment's prohibition against cruel and unusual punishments. *Id.* at 104, 97 S.Ct. 285. To state a cause of action, a plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent. *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000).

Tsai concedes for the purpose of summary judgment that the plaintiff's foot injury constituted a serious medical need. Thus, the Court must consider whether Tsai was deliberately indifferent to the plaintiff's injury during the course of his treatment.

> Deliberate indifference is a subjective standard. *Johnson*, 444 F.3d at 585. To demonstrate deliberate indifference, a plaintiff must show that the defendant "acted with a sufficiently culpable state of mind," something akin to recklessness. *Id.* A prison official acts with a sufficiently culpable state of mind when he knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. *Roe*, 631 F.3d at 857. Deliberate indifference "is more than negligence and approaches intentional wrongdoing." *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 988 (7th Cir. 1998). In other words, "[d]eliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). "A jury can infer deliberate indifference on the basis of a physician's treatment decision [when] the decision [is] so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Id.* (quotation marks omitted). A plaintiff can show that the professional disregarded the need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that

10

> is, that "no minimally competent professional would have so
> responded under those circumstances." *Roe*, 631 F.3d at 857
> (quotation marks omitted).

*Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

A prisoner does not need to show that he was literally ignored, and some treatment does not foreclose his deliberate indifference claim. *Id.* (citing *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). However, disagreement with a medical professional about treatment needs cannot sustain an Eighth Amendment claim under the deliberate indifference standard of *Estelle v. Gamble*, 429 U.S. 97 (1976). *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

The medical evidence in the record shows that Tsai was not deliberately indifferent to the plaintiff's serious medical need. The plaintiff argues that "Tsai doggedly persisted in a course of treatment known to be ineffective." (Plaintiff's Brief, p. 7). However, it was just over three months from the plaintiff's injury until his surgery on April 14, 2009. During that time, Tsai saw the plaintiff regularly and followed a logical course of treatment with the plaintiff, from less intrusive to more intrusive methods of treatment.

One of the plaintiff's complaints is that he had to wait eight days for surgery after Tsai recommended surgery as the proper course of action. This highlights the plaintiff's unreasonable expectations as eight days to get on a surgeon's schedule for a non-emergency is reasonable, even for a non-prisoner patient.

Tsai exercised his medical judgment in choosing medication and treatment

11

plans, *see Arnett*, 658 F.3d at 751, and he is entitled to summary judgment on the plaintiff's Eighth Amendment medical care claim.

## IV. ADDITIONAL MOTIONS

On June 19, 2012, Tsai filed a motion to stay discovery while his motion for summary judgment is pending. The Court's resolution of Tsai's motion for summary judgment renders this motion moot; it will be denied.

On December 7, 2011, two months after Tsai's motion for summary judgment was fully briefed, the plaintiff filed a motion for leave to file an amended complaint, along with a proposed amended complaint, and a motion requesting the Court's assistance in identifying the remaining John Doe. Then, on February 29, 2012, the plaintiff filed a Second Amended Complaint asserting a state law medical negligence claim against defendants Tsai and Carlo Gaanan.

First, in his motion for leave to file amended complaint, the plaintiff indicates that he has identified Jane Doe who took his crutches away in March 2009 as Kay Rodgers. He also has identified John Doe 2, the captain of the segregation unit on May 8, 2009, as Terry Gamble. The proposed amended complaint does not substantively change the plaintiff's claims so there is no need for it to supersede the original complaint. Instead, the Court will construe the motion to amend as a motion to substitute Kay Rodgers for the defendant identified as Jane Doe and Terry Gamble as the defendant identified as John Doe 2, and grant it. The Court will direct service on these new defendants pursuant to the

informal service agreement with the Attorney General's office. The caption and docket will be updated to reflect these substitutions.

Second, at this time, the court will deny without prejudice the plaintiff's motion requesting the Court's assistance in identifying John Doe 1, the second shift supervisor in segregation on May 8, 2009. The plaintiff has not been able to identify John Doe 1. He could not find this information in the responses to two sets of discovery requests and asks for the court's assistance in identifying John Doe 1. Once Gamble has been served, the plaintiff shall serve him with discovery requests asking Gamble if he knows the identity of John Doe 1. Gamble either will know who the second shift supervisor that day was, or he will have access to records showing who it was. If, after additional discovery requests to the new defendants, the plaintiff remains unable to identify John Doe 1, then the plaintiff may again ask the Court to assist him.

Finally, the Court will strike the plaintiff's second proposed complaint, filed on February 29, 2012. The plaintiff did not file a motion seeking leave to amend, describing the amendment he sought, or attaching a complete proposed amended complaint. The second proposed complaint is only a supplement and sets forth only medical negligence claims against defendants Tsai and Gaanan. Even if the plaintiff had filed a motion to amend, the Court would not exercise its discretion to allow the plaintiff to add medical negligence claims against Tsai and Gaanan at this time. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (The decision on whether to allow the amendment is within the discretion of the district court.).

The addition of a state law claim months after the motion for summary judgment by one of the medical defendants was fully briefed would unduly prejudice both doctors.

## V. ORDER

**IT IS THEREFORE ORDERED** that defendant Davis Tsai's motion for summary judgment (Docket #22) is **granted**.

**IT IS FURTHER ORDERED** that the plaintiff's motion opposing summary judgment (Docket #29) is **denied**.

**IT IS FURTHER ORDERED** that, upon the resolution of the plaintiff's remaining claims, the Clerk of Court shall enter judgment in favor of Tsai.

**IT IS FURTHER ORDERED** that the plaintiff's motion to substitute parties (Docket #39) is **granted**.

**IT IS FURTHER ORDERED** that Kay Rodgers be substituted for Jane Doe and Terry Gamble be substituted for John Doe 2.

**IT IS FURTHER ORDERED** that the plaintiff's motion requesting the court's assistance in identifying the remaining John Does (Docket #40) is **denied without prejudice**.

**IT IS FURTHER ORDERED** that the plaintiff's Second Proposed Amended Complaint (Docket #42) is **stricken**.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint

and this order are being electronically sent today to the Wisconsin Department of Justice for service on defendants Kay Rodgers and Terry Gamble.

**IT IS ALSO ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, defendants Rodgers and Gamble shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

Dated at Milwaukee, Wisconsin, this 29th day of June, 2012.

**SO ORDERED,**

*[signature: Rudolph T. Randa]*

**HON. RUDOLPH T. RANDA**
**U. S. District Judge**